842 F.2d 333
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Louis G. VIDAL, Defendant-Appellant.
 No. 87-5952.
 United States Court of Appeals, Sixth Circuit.
 March 17, 1988.
 
 Before KEITH, BOYCE F. MARTIN Jr., and RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant Louis G. Vidal appeals from the denial of his motion to suppress evidence obtained upon his arrest for possession of, with the intent to distribute, marijuana, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. Vidal entered a conditional plea of guilty on May 12, 1987, reserving the right to appeal the adverse ruling on his suppression motion. Fed.R.Crim.P. 11(a)(2). For the following reasons, we AFFIRM.
 
 
 2
 In December, 1986, Sergeant C.R. Swain of the Shelby County (Tennessee) Sheriff's Department, while on assignment to the Metro Narcotics Unit, received information from a confidential informant that there was an organization located in Tuscon, Arizona that was engaging in the delivery of marijuana into the Memphis area. In the course of his initial investigation, acting in an undercover capacity, Swain attempted to arrange controlled deliveries from the Tuscon organization through telephone calls to Tucson. One of the Tuscon addresses which Swain had reached by telephone was on South Campbell Street. Ultimately, Swain's attempts to arrange a controlled delivery were unsuccessful.
 
 
 3
 On January 19, 1987, the confidential informant contacted Swain and advised him that a delivery of approximately one-hundred (100) pounds of marijuana would take place that day, and that the courier would be a Latin or Mexican individual.[1] The confidential informant further informed Swain that the marijuana would be delivered to a Jeff Wheeler, and that the informant was with Wheeler at an address in Memphis. Later that day, assembled officers from Metro Narcotics and the Drug Enforcement Administration observed a person who was later identified as Vidal, fitting the description provided by the confidential informant, as he exited a flight from Tuscon.
 
 
 4
 While still under surveillance, Vidal made a telephone call. After the phone call was completed, Swain was contacted by the confidential informant on his paging unit. He returned the call, and was told by the confidential informant that he had just received a phone call from the courier and that "Luis" was there (at the airport). Vidal proceeded to the baggage claim area, where he retrieved two suitcases and a duffel bag. He was then approached by Swain and two DEA agents, all of whom identified themselves.
 
 
 5
 When asked for identification, Vidal produced a military identification card identifying him as "Luis Vidal" and listing an address on South Campbell Street, Tuscon, Arizona. Swain then advised Vidal of his Miranda rights, stated that the authorities had information that Vidal was bringing marijuana into the Memphis area, and asked for oral permission to search his luggage, which Vidal granted.
 
 
 6
 A narcotics sniffing dog had been brought to the scene, and it was decided by Swain that the dog would attempt to detect the presence of contraband while the luggage remained unopened. However, the dog failed to detect the presence of any drug. Not surprisingly, Vidal then rescinded his consent to a further search. After conferring with the Assistant United States Attorney by telephone, the officers concluded that there was probable cause to detain Vidal and obtain a search warrant. Vidal was taken to the Metro Narcotics Office, where he gave written consent to a search of his luggage.[2] In that search, the officers found five bales of marijuana weighing approximately eighty-one pounds, each of which had been wrapped in several layers of plastic wrap with baking soda or baking powder filling each layer.[3] When a bale was cut, the narcotics sniffing dog detected the presence of drugs. Vidal subsequently made a detailed statement concerning his involvement in the enterprise.
 
 
 7
 Vidal argues that, once the narcotics sniffing dog registered a negative response to the existence of drugs, any probable cause finding was destroyed; and that, therefore, no probable cause to arrest him existed, and that his motion to suppress the evidence and his statement should have been granted. We do not agree.
 
 
 8
 Probable cause has been defined as the presence of:
 
 
 9
 ... facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.
 
 
 10
 Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). At the time of the arrest, the officers had ample evidence, independent of the canine search, sufficient to warrant a belief that Vidal was engaged in the trafficking of marijuana. A confidential informant, who had proved reliable in the past, gave a description of a man who would be arriving on a flight from Tuscon with the marijuana. Vidal, who fit the description, did in fact arrive on a flight from Tuscon on the day indicated. Upon his arrival, he called the contact in Memphis and the informant confirmed the name "Luis." Before Vidal was arrested, he produced identification demonstrating that his name was, in fact, "Luis," and that his address in Tuscon matched an address which Swain had obtained during his earlier investigation. Indeed, before the arrest, the officers had confirmed every salient point of the informant's information except whether Vidal actually had the marijuana with him. See Draper v. United States, 358 U.S. 307 (1959). Under these circumstances, probable cause existed to arrest Vidal.
 
 
 11
 The argument that the negative reaction by the dog eliminated the existence of probable cause ignores the fact that the officers did not need to add the additional fact of a positive reaction to establish probable cause to arrest. Indeed, given that Swain had already been informed that, if marijuana shipments from the Tuscon organization were ever intercepted, they would be wrapped in such a way as to eliminate odor and evade detection by a narcotics sniffing dog, the officers could not have reasonably hoped to use a positive reaction as a necessary element of probable cause. Notwithstanding any inference, which might be drawn from the telephone call to the Assistant United States Attorney, that the officers doubted the existence of probable cause after the canine search failed, the district court was correct in concluding that the isolated fact of a negative reaction by the narcotics sniffing dog did not counterbalance all of the other inculpatory information concerning Vidal.
 
 
 12
 Accordingly, for the foregoing reasons, the order of the district court is AFFIRMED, and the judgment of conviction is AFFIRMED.
 
 
 
 [1]
 The government also states that the informant described the courier as a "short, stocky Mexican American with a military-type haircut," and that his name was "Luis" or "Lewis." However, the record before us would seem to indicate that, in fact, either Metro Narcotics officers or Drug Enforcement Administration agents at Memphis Metropolitan Airport identified the person actually on the plane with the detail that the government recites. Moreover, although the informant did give the name "Luis" at the airport after Vidal called him, as described infra, the record does not directly indicate that the informant identified the courier as "Luis" prior to that telephone call. At best, the record is ambiguous on these points; the transcript of the suppression hearing, taken as a whole, would seem to indicate that the more detailed description and the name were in fact given to Swain by the informant, and that the government simply failed to make this explicitly clear at the hearing. In any event, the lack of these details does not vitiate the existence of probable cause to arrest Vidal
 
 
 [2]
 There is no indication that this consent was obtained involuntarily, other than the fact that Vidal was arrested. Vidal's argument is that this consent, and the statement he later gave to the authorities, were the fruits of an illegal arrest
 
 
 [3]
 Previously, the confidential informant had advised Swain that, when marijuana was shipped out of Tuscon, it was wrapped in baking soda to conceal the odor of the contraband