**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Aaron L. BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 22, 2007.

Filed May 25, 2007.

Joseph P. Burt, Erie, for appellant.

Bradley H. Foulk, Asst. Dist. Atty., Erie, for Com., appellee.

BEFORE: MUSMANNO, McCAFFERY, and JOHNSON, JJ.

OPINION BY JOHNSON, J:

¶ 1 This appeal poses the question of whether the failure of a trained drug detection dog to alert to the presence of cocaine in a suspect's luggage vitiates probable cause to conduct a physical search of that luggage when multiple tips and the suspect's own conduct suggest that he is transporting illegal drugs. In view of the potential for error by either canine or handler, we conclude that a drug dog's response, by itself, does not negate probable cause for a further search. Rather, the response of the dog or dogs used must be considered by an impartial magistrate

as one element in the "totality of the circumstances" considered to determine probable cause.

¶ 2 In this case, police acting on tips from several sources, targeted defendant Aaron L. Brown for investigation. After subjecting his bag to two "canine sniffs," they obtained a search warrant for his luggage which revealed a digital scale and 30.1 grams of cocaine and lead to Brown's conviction of Possession with Intent to Deliver, see 35 P.S. § 780–113(a)(30). Brown now challenges his judgment of sentence on the basis that the first of the two sniff searches was inconclusive and, as such, vitiated probable cause for the issuance of a search warrant and rendered invalid the warrant actually issued. Brown argues accordingly that the trial court erred in refusing to suppress the evidence seized pursuant to the warrant. Following careful review of Brown's assertions, we find no basis for the relief he seeks. Accordingly, we affirm the judgment of sentence.

¶ 3 Brown's arrest followed a stake-out by Pennsylvania State Police (PSP) Trooper Anthony Bozich based on three tips he had received over a one-year period alleging Brown's participation in the sale and distribution of cocaine in North East Borough, Erie County. The first tip, provided by an anonymous citizen, indicated only that Brown was engaged in the distribution of illegal drugs in North East. The second tip, provided by a Detective Don Dacus of the City of Erie Police Department, indicated that a confidential informant had told Erie Police that Brown transported cocaine from Detroit to Erie, traveling between the two cities by Greyhound bus on weekdays. The third tip was provided to PSP Trooper Steve Farabaugh by another confidential informant who reported that he had assisted Brown in cocaine trafficking and that Brown planned to arrive in Erie on a Greyhound bus traveling from Detroit on the evening of June 22, 2004, carrying cocaine. Trooper Farabaugh then relayed this information to Trooper Bozich.

¶ 4 Based upon this third tip, Trooper Bozich obtained the passenger manifest of a certain bus arriving from Detroit. The manifest showed two male passengers, neither of whom reported the name Aaron Brown. When the bus arrived, however, Bozich noted that one of the passengers matched Brown's appearance as depicted in a driver's license picture obtained from the State of Michigan. The passenger carried only a black nylon duffel bag and disembarked with a companion. When approached by Trooper Bozich, he identified himself as "Keith Smart," and responded to the trooper's question indicating that he was on his way to North East to see his girlfriend. "Smart" denied carrying drugs in his bag or on his person and refused Bozich's request to conduct a search. Accordingly, Bozich detained him pending the arrival of a drug-sniffing dog and his handler. When the dog arrived, its first encounter with the duffel bag proved inconclusive. When the bag was repositioned, however, with a group of bags known not to contain drugs, the dog "alerted" to the presence of contraband. Trooper Bozich then executed an affidavit of probable cause setting forth the foregoing facts with the exception of the failure of the dog to alert on its first encounter with the bag. Based upon the remaining information, the magistrate issued a warrant to search the duffel. The search revealed a digital scale and 30.1 grams of cocaine.

¶ 5 Prior to trial, Brown filed an omnibus pre-trial motion seeking suppression of the evidence seized from his duffel bag. Although Brown failed to appear, his counsel argued that the inconclusive canine sniff, which occurred before the sniff on which the police relied to obtain the search warrant, actually vitiated any probable

cause that may have existed and rendered the warrant illegal. The trial court, the Honorable William R. Cunningham, concluded to the contrary and admitted the evidence of contraband at trial. Based on that evidence, the jury found Brown guilty as charged. At the subsequent sentencing hearing, Judge Cunningham sentenced Brown to three to six years' incarceration to be followed by four years' probation. Before concluding the sentencing proceeding, the court granted private counsel leave to withdraw and the Public Defender of Erie County assumed representation. Brown filed a motion for modification of sentence, which Judge Cunningham denied. Brown then filed this appeal, raising the following question for our review:

> Whether the lower court erred in concluding that sufficient probable cause existed to justify the grant of a search warrant, following an "inconclusive" canine "sniff" search?

Brief for Appellant at 3 (capitalization limited to improve readability).

■ ¶ 6 Brown's question challenges the trial court's order denying his motion to suppress evidence seized under color of a warrant issued on the basis of a canine sniff.

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Reppert,* 814 A.2d 1196, 1200 (Pa.Super.2002) (internal citations and quotation marks omitted). In this case, Brown does not dispute the facts as found by the trial court, but rather challenges the court's application of the law. Brown first challenges the reliability of the three informants on whom Trooper Bozich relied contending that because the first tipster was anonymous and the second two were not personally known to Trooper Bozich, their tips did not offer sufficient reliability to provide probable cause for a "canine sniff." Brief for Appellant at 11 (citing *Commonwealth v. Martin,* 534 Pa. 136, 626 A.2d 556, 560 (1993) (recognizing probable cause as applicable standard for canine sniff of suspect's person)). The Commonwealth concedes that probable cause is the governing standard for the canine sniff conducted here, and argues that the tips, when viewed together, corroborated one another and were additionally corroborated by Trooper Bozich's observations of Brown's arrival in Erie. Brief for Appellee at 4.

■ ¶ 7 We concur in the Commonwealth's assessment of the merits of this issue. "[P]robable cause does not demand the certainty we associate with formal trials." *Illinois v. Gates,* 462 U.S. 213, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 537 (2001) (quoting *Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317). Thus, where the evidence available to police consists of an anonymous tip, probable cause may be established upon corroboration of major portions of the information provided by the tip. *See Gates,* 462 U.S. at 246, 103 S.Ct. 2317. Similarly, where the evidence consists of the allegations of a police informant who has not previously provided information, probable cause requires only

.

corroboration of principal elements of information not publicly available. *See Torres*, 764 A.2d at 539–40. As recognized by the Court in *Gates*, "[i]t is enough, for purposes of assessing probable cause, that '[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" 462 U.S. at 244–45, 103 S.Ct. 2317 (quoting *Jones v. United States*, 362 U.S. 257, 269, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).

¶ 8 Adjudged by this standard, the evidence available to Trooper Bozich readily established probable cause for the first canine sniff search. Although the first tip suggested only that Brown was engaged in dealing illegal drugs in North East Borough, the second tip, provided by a source known to the Erie police department, established that Brown carried on his activity between Detroit and Erie, traveling between the two cities on weekdays by Greyhound bus. The third tip, much like the tip discussed in *Gates, see* 462 U.S. at 227–28, 103 S.Ct. 2317, offered information concerning the exact date of Brown's trip, his mode of travel, the timetable of his travel, his cities of departure and arrival, and his personal appearance. Each succeeding tip built upon the information provided by those before it and particularized the information available to Trooper Bozich. Brown's arrival as predicted corroborated the tips and verified the reliability of the respective informants. This corroboration amply reduced the chances of "a reckless or prevaricating tale," and thereby established probable cause for a canine sniff search of the bag Brown carried. *See id.*

¶ 9 Brown argues in addition, however, that notwithstanding the existence of probable cause for the initial sniff search, the failure of the dog to "alert" upon his first exposure to the duffel bag effectively viti-

ated probable cause and rendered the warrant issued for the physical search of the bag illegal. Brief for Appellant at 12. Brown reasons that in the absence of the information concerning the first "inconclusive" sniff search, "the magistrate who issued the warrant could not make a 'practical, common sense decision' whether to grant or deny the search warrant given that he was not presented with this highly significant and relevant information." Brief for Appellant at 12. Brown fails, however, to cite a single case in support of the conclusion that an inconclusive canine sniff vitiates pre-existing probable cause. The Commonwealth addresses the issue more thoroughly, conceding that Pennsylvania courts have not resolved it. The Commonwealth recognizes, however, that appellate courts in other jurisdictions have considered canine sniff searches specifically as they relate to probable cause.

■ ¶ 10 An overview of these decisions reveals "a near universal recognition that a drug-sniffing dog's failure to alert does not necessarily destroy probable cause[.]" *United States v. Davis*, 430 F.3d 345, 367 (6th Cir.2005). These holdings have arisen in response to law enforcement experience that "[c]anine searches are not infallible[.]" *Id.* (citing *Illinois v. Caballes*, 543 U.S. 405, 412, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (Souter, J., dissenting)). As Justice Souter admonished in *Caballes*:

The infallible [drug-sniffing] dog . . . is a creature of legal fiction. [Indeed] their supposed infallibility is belied by judicial opinions describing well-trained animals sniffing and alerting with less than perfect accuracy, whether owing to errors by their handlers, the limitations of the dogs themselves, or even the pervasive contamination of currency by cocaine.

*Caballes*, 543 U.S. at 411–12, 125 S.Ct. 834 (Souter, J., dissenting). In point of fact, those opinions reveal a significant rate of

error manifested in both "inconclusive" results where a dog failed to alert under circumstances that otherwise indicated the presence of drugs, and false "alerts," in which dogs indicated the presence of drugs where none could be found. *See, e.g., United States v. Limares*, 269 F.3d 794, 797 (7th Cir.2001) (accepting as reliable a dog that gave false positives between 7% and 38% of the time); *United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997) (describing a dog that had a 71% accuracy rate); *United States v. Scarborough*, 128 F.3d 1373, 1378 n. 3 (10th Cir. 1997) (describing a dog that erroneously alerted 4 times out of 24 while working for the postal service and 8% of the time over its entire career); *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464, 476 (2001) (describing a dog that made between 10 and 50 errors).

¶ 11 A similar recognition prompted Judge (now Justice) Stephen Breyer to conclude that a "dog's failure to react does not . . . destroy the 'probable cause' that would otherwise exist. It is just another element to be considered[.]" *United States v. Jodoin*, 672 F.2d 232, 236 (1st Cir.1982). Thus, in *Jodoin*, the court concluded that probable cause continued to exist to search the suitcase of a suspected drug courier even though "a detector dog sniffed the suitcase but the dog did not signal the presence of narcotics." *Id.* at 234. This holding is significant in that the Court premised its ultimate conclusion on the explanation of the investigating officers that "the dogs are not foolproof," they "are less accurate on hot muggy days," and drug traffickers have found ways "to mask the odors of contraband to fool detection efforts." *Id* at 236. The court determined accordingly that the dog's failure to alert did not vitiate probable cause, relying on the circumstances prior to and surrounding Jodoin's apprehension, which continued to suggest his role as a drug courier. *See id.* at 235. Those circum-

stances, like those at issue here, included the defendant's mode and schedule of travel as reported by a previous tip, and his evasiveness in providing investigators with a false name. *See id.* (indicating that Jodoin identified himself by the name "Harper" when questioned by drug enforcement agents).

■ ¶ 12 We recognize that, unlike in this case, the investigating officer in *Jodoin* included the dog's failure to alert in the affidavit of probable cause, allowing the magistrate to consider it as part of the "totality of circumstances." *See id.* at 235–36. Nevertheless, we do not deem the omission of that information from the affidavit here to be dispositive. Although we do not condone the omission of relevant information from an affidavit of probable cause, the fact remains that notwithstanding the failure of the dog to alert on its first encounter with the bag, the remaining circumstances that supported a probable cause determination had not changed. Consistent with the third tip that Trooper Bozich received, Brown arrived in Erie from Detroit on an appointed day and time by Greyhound bus. In addition, he traveled under an assumed name and refused to identify himself truthfully even when questioned by the officers. Moreover, the officer who handled the drug detection dog explained that the animal's failure to alert on the first encounter had likely resulted from the fact that the bags with which Brown's duffel had been placed for the first sniff search had been stored with the dog's training gear, ostensibly prompting those bags to smell of narcotics. N.T., Suppression Hearing, 12/10/04, at 15.

¶ 13 Thus, even had the magistrate had the benefit of information concerning the first "inconclusive" search, the other facts available to him remained legally ample to establish probable cause. Numerous jurisdictions, both federal and state, have

reached similar conclusions, mindful of both the dogs' vulnerability to confusion and that failure to alert to the alleged presence of narcotics is but one factor in adjudging the totality of the circumstances underlying probable cause. *See, e.g., United States v. Stephens,* 129 F.3d 1266 (Table), 1997 WL 720412 at *2–3, 1997 U.S.App. LEXIS 33049, at *7–8 (6th Cir. 1997) (unpublished opinion cited with approval in *Davis,* 430 F.3d at 366) (upholding probable cause for detention of suitcase although neither of two dogs alerted to the bag under investigation before a third dog alerted to the bag). *See also United States v. Ramirez,* 342 F.3d 1210, 1213 (10th Cir.2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all."); *United States v. $141,770.00 in U.S. Currency,* 157 F.3d 600, 604 n. 4 (8th Cir.1998) (finding totality of the circumstances sufficient to establish probable cause based in part on extensive use of dryer sheets as wrapping for drug-tainted cash in effort to confuse drug sniffing dog); *United States v. Glover,* 104 F.3d 1570, 1577 (10th Cir.1997) ("[Defendant] relies on a line of cases holding that probable cause is established once a drug dog alerts on a package for the mistaken proposition that absent such an alert, officers are not entitled to detain the package any further. Contrary to [defendant's] assertion, drug-detecting dogs have not supplanted the neutral and detached magistrate as the arbiter of probable cause."); *United States v. Lartigue,* Nos. 93–5356/93–5369, 1994 WL 151337, at *5–6, 1994 U.S.App. LEXIS 9342, at *14–15 (6th Cir.1994) (unpublished opinion cited with approval in *Davis,* 430 F.3d at 366) ("Defendants contend that the failure of canine 'Pete' to alert on the bag negated the existence of probable cause. Defendants cite no authority in support of this proposition. Certainly, an alert by the drug dog would increase the officers' suspicions. On the other hand, the failure of a dog to alert does not nullify the officers' suspicions."); *United States v. Frost,* 999 F.2d 737, 744 (3d Cir.1993) ("When one includes both the fact that the drug sniffing dog did not alert to the suitcase and the fact that drug couriers often mask the scent of drugs in suitcases so that a drug sniffing dog will not alert, the failure to alert to the suitcase is not inconsistent with the substantial probative thrust of information which [the officer] did include [in the warrant application]."); *United States v. Vidal,* 842 F.2d 333 (Table), 1988 WL 24216 at *1, 1988 U.S.App. LEXIS 3374, at *4–5 (6th Cir.1988) (unpublished opinion cited with approval in *Davis,* 430 F.3d at 366) (rejecting defendant's argument that "once the narcotics sniffing dog registered a negative response to the existence of drugs, any probable cause finding was destroyed[.]"); *United States v. Sullivan,* 625 F.2d 9, 12 (4th Cir.1980) (upholding detention when a "dog did not show a 'full alert'" but "did show an interest in one blue bag"); *McKay v. State,* 149 Md. App. 176, 814 A.2d 592, 599 (2002) ("We agree with the reasoning in *Jodoin* ... that a drug sniffing dog's failure to detect drugs does not automatically negate probable cause. It is, instead, but one factor to be considered in the probable cause determination.").

¶ 14 We find the weight of this authority compelling. We hold accordingly that the failure of a trained dog to respond to the alleged presence of narcotics is but one factor to be considered in adjudging whether the totality of the circumstances establishes probable cause. Given the recognized fallibility of the dogs' sense of smell and its vulnerability to confusion by other ambient odors, a dog's failure to alert will not defeat probable cause where other factors, viewed within the totality of the circumstances, continue to support it. The trial court treated the failure of the

dog to alert on its first encounter with Brown's bag in precisely this manner, recognizing that the totality of the circumstances continued to support probable cause. Consequently, we find no error in its decision not to suppress the evidence seized following the physical search of Brown's duffel bag.

¶ 15 For the foregoing reasons, we affirm the judgment of sentence.

¶ 16 Judgment of sentence **AFFIRMED.**