IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 36406

| STATE OF IDAHO, | ) | 2011 Opinion No. 24 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 28, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STEVEN CLAY ANDERSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Judgment of conviction for unlawful possession of a firearm, affirmed.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jennifer E. Birken, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Steven Clay Anderson appeals from his judgment of conviction for unlawful possession of a firearm. Specifically, Anderson argues that the district court erred in denying his motion to suppress evidence of the weapon found in his vehicle. We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Cassia County Deputy Antonio Bernad was patrolling in Burley when he stopped a van driven by Anderson. Incident to the stop, Officer Bernad called for a drug dog. While Officer Bernad was processing information and proceeding to write citations, the dog alerted on the passenger side door of the van. Officer Bernad directed that the dog be placed in the van. The dog did not alert while inside the van. Officer Bernad and another officer searched the van and located a firearm, but no drugs. Anderson, who had a prior felony conviction, was charged with possession of a firearm by a felon, Idaho Code § 18-3316, and failure to provide proof of

1

insurance, I.C. § 49-1232. He filed a motion to suppress evidence of the firearm, asserting that the search of the van violated his constitutional rights. After taking evidence and argument at a suppression hearing and reviewing the video and audio evidence submitted at the hearing, the district court entered a memorandum decision denying Anderson's motion to suppress. Thereafter, Anderson entered a conditional guilty plea to possession of a weapon by a felon, reserving his right to challenge the denial of his suppression motion. This appeal followed.

## II.

## ANALYSIS

When a decision on a suppression motion is challenged, we accept the trial court's findings of fact if they are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution prohibit unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable unless they fall within one of a few narrowly drawn exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Aschinger*, 149 Idaho 53, 56, 232 P.3d 831, 834 (Ct. App. 2009). One such exception, the "automobile exception," allows officers to search an automobile if they have probable cause to believe that it contains contraband or evidence of a crime. *United States v. Ross*, 456 U.S. 798, 807-08 (1982); *State v. Wigginton*, 142 Idaho 180, 182, 125 P.3d 536, 538 (Ct. App. 2005). Probable cause is established if the facts available to the officer at the time of the search would warrant a person of reasonable caution in the belief that the area or items to be searched contain contraband or evidence of a crime. *Ross*, 456 U.S. at 808 n.10; *State v. Yeoumans*, 144 Idaho 871, 873, 172 P.3d 1146, 1148 (Ct. App. 2007). Probable cause is a flexible, common-sense standard. *Yeoumans*, 144 Idaho at 873, 172 P.3d at 1148. "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*,

2

462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). *See also Texas v. Brown*, 460 U.S. 730, 742 (1983); *State v. Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005). In determining probable cause, the court must consider the totality of the circumstances known to the officer at the time of the search. *Gates*, 462 U.S. at 230-33. "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar*, 338 U.S. at 176.

Anderson raised two arguments in the district court. First, he asserted that the stop was illegally extended by the officers. He does not make this claim on appeal. Second, Anderson claimed that "when the drug dog failed to produce any contraband within the vehicle the officers lost their probable cause to be in the vehicle and therefore should not have reentered it." In his argument regarding this second claim, Anderson stated: "As to the second issue once the drug dog hit on the van it then gave the officer's probable cause to allow the dog to search the vehicle." Therefore, contrary to certain arguments advanced on appeal, Anderson did not challenge below the officers' probable cause, based upon the drug dog's positive alert, to search the interior of the van, and we will not further address any such claim.[1] Additionally, Anderson never claimed below that the drug dog was unqualified, by training and experience, or unreliable. Anderson did not argue to the district court that foundation regarding the dog's training and reliability was insufficient to allow admission of the evidence. *See State v. Howard*, 135 Idaho 727, 24 P.3d 44 (2001) (challenging sufficiency of foundation to admit drug dog evidence). Although the dog handler testified that the dog had two prior false positive alerts, which were explained by the circumstances, Anderson did not argue to the district court, as he does on appeal, that the dog had an inability to distinguish between residual odors from present drugs or how that fact, if established, affected the probable cause analysis. *See State v. Braendle*, 134 Idaho 173, 997 P.2d 634 (Ct. App. 2000) (challenging sufficiency of evidence to demonstrate probable cause). In *Yeoumans*, 144 Idaho at 875, 172 P.3d at 1150, this Court held that an otherwise reliable, certified drug dog's alert is sufficient to demonstrate probable cause even if

---

[1]     There is no question that a reliable drug dog's alert on the exterior of a vehicle provides probable cause for a warrantless search of the interior. *Gibson*, 141 Idaho at 281, 108 P.3d at 428; *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999).

there exists a possibility that the dog has alerted on residual odors. While the *Yeoumans* Court further indicated that a district court may take the fact that a drug dog sometimes responds to residual odors into account to assess the dog's reliability, *id*., Anderson, at no time raised any question as to the dog's reliability. In fact, Anderson argued in the district court that since the alert of the "trained dog" on the outside of the van was sufficient to establish probable cause to search the interior, that same dog's failure to alert when inside the van dissipated or eliminated the probable cause. Thus, Anderson argued the "trained" dog's failure to alert inside the van was, in fact, reliable. We will not further address issues raised on appeal regarding the training and reliability of the drug dog.

We return then to the sole issue on appeal, which is whether, under the circumstances, the drug dog's failure to alert inside the van precluded the officers from searching themselves. While the drug dog's alert on the passenger door alone provided the officers with probable cause to search the van, we also consider the other factors existing at the time. Prior to making the stop, Officer Bernad observed Anderson's vehicle straddling the center line of southbound lanes of traffic, causing other vehicles to drive out of their lane to go around Anderson's vehicle. Anderson nearly side-swiped a vehicle on the right, causing the other vehicle to swerve to avoid collision. After Officer Bernad activated his emergency lights, the van did not immediately stop. After activating his siren, the van traveled another block before stopping. Upon making contact with Anderson, Officer Bernad was told by Anderson that the van was not his, but was his brother's, and that the license plates on the van were not issued for the van and that he had put them on. After exiting the van, Anderson told Officer Bernad that his erratic driving was because he was paying attention to a metal bar of platinum, which Officer Bernad later observed between the seats of the van. Anderson advised Officer Bernad that he had no insurance. Anderson told Officer Bernad that he had charges pending for controlled substance sales and delivery.

Officer Bernad told Anderson that he would be issuing citations. Officer Bernad directed Anderson to get back into the driver's seat of the van and keep his hands on the wheel where he could see them. Officer Bernad began processing a driver and vehicle check. While doing so, he observed that Anderson was doing quite a bit of moving around in the vehicle and it did not appear that he was abiding by the direction to keep his hands on the wheel. Officer Bernad indicated that he was concerned by these movements for his own safety, not knowing what

4

Anderson was doing, and that these fast movements, coupled with Anderson's pending criminal charges, made him concerned that Anderson might be under the influence of stimulants. At that point, contrary to instructions, Anderson began to exit the van and Officer Bernad ordered him to the back of the van where he was searched for weapons, which produced two pocket knives, and was thereafter watched by another officer on the scene. While Officer Bernad completed the records check and issuance of citations, the drug dog arrived and alerted on the passenger door. Officer Bernad directed the handler to place the dog in the van, which was done, but no further alerts were observed while the dog was inside. The dog was then placed in the patrol car and the officers searched the van, locating the weapon, but no drugs.

The district court correctly held that the officers had probable cause to conduct a search of the interior of the vehicle. The district court further pointed out that Anderson had failed to cite any authority for the proposition of probable cause dissipation. The State also argues that the officers were entitled to conduct the search in a manner that employed manual search as well as use of the drug dog and that Anderson failed to cite to any authority that failure of one search method to locate contraband foreclosed the other.

The question of dissipation of probable cause appears to be one of first impression in Idaho. Thus, the Idaho appellate courts have yet to define or expound on the contours of this proposition. We have located cases discussing the general nature of dissipation of probable cause. In *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005), the court stated:

> If probable cause is established at an early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity. . . . "As a corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988).

We have located no decisions with the precise facts presented here; however, numerous cases discuss the impact on a probable cause determination of a drug dog's failure to alert. These courts generally hold that a drug dog's failure to alert is but one factor to be considered. Illustrative of the cases is then--Judge Breyer's opinion in *United States v. Jodoin,* 672 F.2d 232 (1st Cir. 1982), which holds that a "dog's failure to react does not . . . destroy the 'probable cause' that would otherwise exist. It is just another element to be considered." *Id.* at 234-236 (holding that officers' actions did not violate the Fourth Amendment when, supported by

5

probable cause, they held defendant's suitcase for several days, even though "a detector dog sniffed the suitcase but the dog did not signal the presence of narcotics"). *See also United States v. Ramirez,* 342 F.3d 1210, 1213 (10th Cir. 2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all."); *United States v. Gill,* 280 F.3d 923, 926 n.3 (9th Cir. 2002) (denying defendant's suppression motion although a drug "dog did not alert" and noting that drug dogs "are not trained to detect PCP or methamphetamine due to the risk these substances pose to the dogs"); *United States v. Glover,* 104 F.3d 1570, 1577 (10th Cir. 1997) ("[Defendant] relies on a line of cases holding that probable cause is established once a drug dog alerts on a package for the mistaken proposition that absent such an alert, officers are not entitled to detain the package any further. Contrary to [defendant's] assertion, drug-detecting dogs have not supplanted the neutral and detached magistrate as the arbiter of probable cause."); *United States v. Frost,* 999 F.2d 737, 744 (3rd Cir. 1993) ("When one includes both the fact that the drug sniffing dog did not alert to the suitcase and the fact that drug couriers often mask the scent of drugs in suitcases so that a drug sniffing dog will not alert, the failure to alert to the suitcase is not inconsistent with the substantial probative thrust of information which [the officer] did include [in the warrant]."). [2]

---

[2]  *See also United States v. Davis*, 430 F.3d 345, 366 (6th Cir. 2005) (Judge Sutton, concurring in part and dissenting in part):

> Our circuit, in an unpublished disposition, has upheld the detention of a suitcase although "[n]either [of two] dog[s] alerted to the bag" before a dog named "Pete alerted positively to the bag." *United States v. Stephens*, 96-6551, 1997 WL 720412 at *2-3 1997 U.S. App. LEXIS 33049, at *7-8 (6th Cir. Nov. 14, 1997). The *Stephens* panel noted that the defendant had used dryer sheets to mask the odor of the drugs, *see id*. at 3, n.2; *United States v. 141,770.00 in United States Currency*, 157 F.3d 600, 604 n.4 (8th Cir.1998) ("The wide-spread use of scented dryer sheets to mask the smell of illegal narcotics is well documented in the decisions of the Courts of Appeals."), and reasoned that the defendant's lies to an officer and her drug-courier profile independently gave the police "probable cause to believe that [the] defendant's luggage contained contraband at the time it was seized and detained," *Stephens*, 1997 WL 720412 at *4, 1997 U.S. App. LEXIS 33049, at *11-12; see also *United States v. Lartigue*, Nos. 93-5356/93-5369, 1994 WL 151337, at *5-6, 1994 U.S. App. LEXIS 9342, at *14-15 (6th Cir. Apr. 26, 1994) (noting that the defendants "cite no authority in support of th[e] proposition" that "the failure of [the] canine 'Pete' to alert on the bag negated the existence of probable cause" and holding that "the failure of a dog to alert does

In *McKay v. State*, 814 A.2d 592 (Md. 2002), officers possessed probable cause to search a vehicle for drugs. However, moments before beginning the search, a drug dog failed to alert to the presence of drugs. The Maryland court noted that a positive alert from a drug dog provides probable cause to search but held: "It does not follow from this settled proposition, however, that probable cause is dissipated by the dog's *failure* to alert." *Id*. at 598 (emphasis in original). The *McKay* court further held that a drug dog's failure to detect the presence of drugs does not negate probable cause, but is one factor to consider in the probable cause determination. *Id*. at 599.[3] In *State v. Sanchez-Loredo*, 220 P.3d 374, 378 (Kan. Ct. App. 2009), the court held:

> The district court also concluded that the failure of the drug dog to alert to possible contraband did not eliminate the probable cause that the facts of this case already supported, and we agree. See *State v. Gonzales*, 2004 WL 2085586, at *4 (Kan. App. 2004) (unpublished opinion), *rev. denied* 278 Kan. 849 (2005) (failure of a drug dog to alert is only one factor to be considered in a probable-cause determination).

In *State v. Siluk,* 567 So. 2d 26 (Fla. Ct. App. 1990), a drug dog alerted to a bag of luggage in Houston, but after the bag was allowed to proceed to Orlando, a second drug dog failed to alert. The court held: "We do not accept the argument that the failure of the local narcotics dog to 'alert' to the luggage neutralized the probable cause flowing from [a prior] alert." *Id*. at 28; *cf. United States v. Guzman,* 75 F.3d 1090, 1096 (6th Cir. 1996) (noting that a "dog's interest in defendant Guzman's bag" could be taken into account "when determining whether the totality of the circumstances established probable cause to seize [the] defendant"); *United States v. Spetz,* 721 F.2d 1457, 1464 (9th Cir. 1983); *Schmid v. State,* 615 P.2d 565, 577 (Alaska 1980). *United States v. Sullivan,* 625 F.2d 9, 12 (4th Cir. 1980) (upholding detention when a "dog did not show a 'full alert'" but "did show an interest in one blue bag"*).*

---

> not nullify the officers' suspicions"); *United States v. Vidal*, No. 87-5952, 1988 WL 24216 at *1-2, 1988 U.S. App. LEXIS 3374, at *4-5 (6th Cir. Mar. 17, 1988) (rejecting defendant's argument that "once the narcotics sniffing dog registered a negative response to the existence of drugs, any probable cause finding was destroyed").

[3]    *Longshore v. State*, 924 A.2d 1129 (Md. 2007), cited by the dissent, distinguished but did not overrule *McKay*.

We have located no cases which specifically hold that a search based upon probable cause must be aborted when a drug dog fails to alert or the initial search proves fruitless. In *United States. v. Olivera-Mendez,* 484 F.3d 505 (8th Cir. 2007), a drug dog alerted on a vehicle, establishing probable cause for a search. Two roadside searches produced no drugs, although some evidence suggested that drugs may have been cleverly concealed. A third search at a highway patrol garage, six hours later, produced contraband. The court rejected the claim that probable cause dissipated, noting first that "[i]f probable cause justifies the search of lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 512 (quoting *Ross*, 456 U.S. at 825). *See United States v. Patterson*, 140 F.3d 767 (8th Cir. 1998) (fruitless manual search, conducted upon probable cause, did not cause loss of probable cause, allowing for employment of drug dog to locate contraband in the vehicle).

In determining probable cause, the court must consider the totality of the circumstances known to the officer at the time of the search. *Gates*, 462 U.S. at 230-33. The rationale that the drug dog's failure to alert is but one factor to be considered appears consistent with the totality of the circumstances approach. Even considering the drug dog's unexplained failure to alert in the vehicle, the officers' manual search of the vehicle was supported by probable cause based upon the totality of the circumstances. In this case, although probable cause was established by the drug dog's initial alert on the vehicle, more information than just the activity of the drug dog was in play. The officer encountered Anderson late at night, driving erratically, in an unregistered vehicle which he did not own, upon which he had placed fictitious plates, and for which there was no insurance. The officer was forced to employ both lights and siren in order to get Anderson to stop. Anderson failed to follow the officer's directions, engaging in furtive movements of unknown and suspicious purpose, and attempting to exit the vehicle. He also was under pending charges for controlled substance sales and delivery.[4] Applying a common sense approach to these facts, the officers had probable cause to believe drugs would be found in the van. As noted, "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S.

---

[4]     Anderson states in his brief that he had a "pending drug possession charge."

at 231 (quoting *Brinegar*, 338 U.S. at 175). *See also Brown*, 460 U.S. at 742; *Gibson*, 141 Idaho at 281, 108 P.3d at 428. We conclude that, under the totality of the circumstances, the officers' search of the vehicle was supported by probable cause.

## III.

## CONCLUSION

The drug dog alert on the outside of the vehicle provided probable cause to search the interior of the vehicle. Given the totality of the information and circumstances available to the officers at the time, the drug dog's failure to alert while in the vehicle, did not cause the loss of probable cause for the officers to search the vehicle. Anderson's judgment of conviction and the district court's order denying his motion to suppress are affirmed.

Judge GUTIERREZ **CONCURS.**

Judge LANSING, **DISSENTING**

I respectfully dissent, for I conclude that the evidence here does not show probable cause to believe that Anderson's van contained illegal drugs at the point when the search was conducted.

The majority opinion cites an impressive array of cases holding that the failure of a drug dog to alert on a vehicle or container does not necessarily nullify probable cause that has arisen from other, independent information known to the officer. I do not take exception to that proposition. That, however, is not the issue presented by this appeal. The question here is whether probable cause that has arisen *only because a trained drug dog alerted* on the exterior of a vehicle survives after the *same trained drug dog fails to alert* when allowed to conduct another, more intrusive examination of the vehicle's interior. I would hold that in this circumstance, the State did not meet its burden to prove probable cause for the search of Anderson's van.

Probable cause for a search exists when the facts available to the officer at the time of the search would "warrant a [person] of reasonable caution in the belief" that the area or items to be searched contains evidence of a crime. *Safford Unified School Dist. No. 1 v. Redding*, ___ U.S. ___, ___, 129 S. Ct. 2633, 2639 (2009); *New Jersey v. T.L.O.*, 469 U.S. 325, 358 (1985); *Carroll v. United States*, 267 U.S. 132, 162 (1925); *State v. Yeomans*, 144 Idaho 871, 873, 172 P.3d 1146, 1148 (Ct. App. 2007). The determination of probable cause requires consideration of the totality of the circumstances known to the officers at the time of the search. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *State v. Chandler*, 140 Idaho 760, 762, 101 P.3d 704, 706 (Ct.

App. 2004). This standard does not allow law enforcement officers or the courts to "cherry-pick" the facts and consider only those that would contribute to probable cause while ignoring those facts known to the officer at the time of the search that would tend to negate probable cause. Further, once probable cause emerges from information received or observations made by officers, it does not become fixed and immutable. Rather, it is a "fluid concept--turning on the assessment of probabilities in particular factual contexts." *Gates*, 462 U.S. at 232. Accordingly, just as gradually unfolding circumstances becoming known to an officer may evolve into probable cause to believe that a search would yield evidence of a crime, the continuing enfoldment of additional facts and circumstances may dispel the reason for such belief. The Ninth Circuit Court of Appeals so noted in *United States v. Lopez*, 482 F.3d 1067 (9th Cir. 2007), stating:

> In some instances there may initially be probable cause justifying an arrest, but additional information obtained at the scene may indicate that there is less than a fair probability that the defendant has committed or is committing a crime. In such cases, execution of the arrest or continuation of the arrest is illegal.
> . . . .
> It will not suffice that at some earlier point in time--before the police gleaned certain "dissipating" facts--the police may have had probable cause.

*Id.* at 1073. *See also United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) ("If probable cause is established at an early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging in criminal activity," and "[police] may not disregard facts tending to dissipate probable cause.").

As the Maryland Court of Appeals stated in *Longshore v. State*, 924 A.2d 1129 (Md. 2007):

> [A] failed drug sniff is exactly the type of evidence that tends to undermine the conclusion of the presence of drugs. It is a negating factor that has a substantial impact on the determination of probable cause, and cannot be lightly ignored. Moreover, the weight to be given to the dog sniff is directly related to the credibility of the dog's abilities, which, in turn, can be inferred from the dog's performance under the circumstances. If a dog fails to alert to the presence of drugs, and no explanation for why such a failure occurred is given, the trial court should weigh this differently than it would a failure of the drug dog to alert, accompanied by a plausible justification for the failure. Additionally, any

10

inconsistencies between multiple alert results must be taken into consideration, under the totality of the circumstances.

*Id.* at 1156.

In the present case, the drug dog's failure to alert on anything inside the van is a prominent factor in the totality of the circumstances that must be considered. Although this failure to alert would not necessarily have destroyed any probable cause that might have arisen from independent information, it did directly contradict the same dog's prior alert on the exterior. The failure to alert inside thereby extinguished or counterbalanced any weight that otherwise could have been assigned to the initial alert in the probable cause calculus. No evidence was proffered to suggest that the dog's alert on the exterior should be considered more reliable than the omission to alert inside. To the contrary, the dog's known inability to distinguish between the odor of present drugs and residual odors gave reason for the officers to suspect that the exterior alert was the inaccurate response.

This circumstance is analogous to that where probable cause is predicated upon an apparently well-grounded tip from a normally trustworthy informant. If the informant thereafter persuasively recants, or admits to facts showing that his information is inherently unreliable, the totality of the facts known to the officers would no longer add up to probable cause. Likewise, after the dog's failure to alert inside Anderson's van, its initial alert no longer "warrant[ed] a person of reasonable caution in the belief" that the van's interior contained drugs.

In my view, when the dog's alert is properly discounted, no probable cause for the search of Anderson's van was shown.[1] "While conclusive evidence of guilt is not necessary to establish probable cause, '[m]ere suspicion, common rumor, or even strong reason to suspect are not enough.'" *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009). *See also State v. Cook*, 106 Idaho 209, 221, 677 P.2d 522, 534 (Ct. App. 1984) ("[P]robable cause must consist of more than mere suspicion . . . .").

The only facts known to the officers here that could contribute to probable cause, apart from the dog's initial alert, were Anderson's aberrant driving before he was stopped, his admission to Deputy Bernad that he had a drug charge pending, and Deputy Bernad's observation that Anderson moved around in his vehicle after the deputy had told him to sit still

---

[1] The State does not contend that probable cause existed absent the dog's alert.

11

with his hands on the steering wheel. Although the deputy at one point testified that he suspected that Anderson might be under the influence of a stimulant because of his rapid movements while seated in the van and his admission of pending drug charges, the deputy later acknowledged that this was just a hunch. He acknowledged that he did not observe Anderson's eyes to be bloodshot or the pupils dilated, and he made no mention in his police report of any suspicion that Anderson had been using drugs. Nor did the deputy ask Anderson to perform any sobriety tests. Additionally, a video of the event shows that when Anderson was outside of the vehicle he was not stumbling or evidencing poor balance nor displaying fidgeting or uncontrolled muscle movements that might be indicative of drug use. The majority implies that Anderson did not stop quickly enough after Deputy Bernad activated his lights and siren. However, the transcript shows that he traveled over a bridge, on which there was no place to pull over, and continued about an additional block before he stopped. This hardly indicates an effort to evade or an unreasonable delay in stopping. The majority also cites, as supporting probable cause, the fact that the vehicle that Anderson was driving was unregistered and that he had no proof of insurance.[2] While these facts indicate a violation of the law that would warrant issuance of citations and perhaps further investigation, they are not indicative of drug use or possession.

Thus, when the initial dog alert on the exterior of Anderson's van is properly discounted because of the same dog's "retraction," the factors cited by the majority do not add up to probable cause to believe that there were illegal drugs in Anderson's van when the search was conducted. Accordingly, I would reverse.

---

[2] Before the search, the deputy confirmed that the vehicle was not stolen.

12