J-S73037-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| ERNEST CHARLES PRATT, | : | |
| Appellant | : | No. 144 MDA 2017 |

Appeal from the Judgment of Sentence December 20, 2016
in the Court of Common Pleas of Centre County,
Criminal Division, at No(s): CP-14-CR-0001581-2015

BEFORE:    OLSON, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 22, 2017**

Ernest Charles Pratt (Appellant) appeals from his December 20, 2016 judgment of sentence of 15 days to 23½ months of incarceration following his nonjury convictions for possession with intent to deliver (PWID) a controlled substance, possession of drug paraphernalia, and conspiracy (PWID). Specifically, Appellant challenges the denial of his pre-trial suppression motion. We affirm.

On September 8, 2015, Trooper Robert Warman conducted a traffic stop on Interstate 80 in Mercer County of a rental vehicle with a Tennessee license plate for a left lane violation. Trooper Warman encountered Andrew Holbrook, the driver of the vehicle, and Appellant, the front-seat passenger and the individual to whom the rental vehicle was registered. Trooper Warman questioned Appellant and Mr. Holbrook separately about their travel plans.

---

*Retired Senior Judge assigned to the Superior Court.

N.T., 3/24/2016, at 13, 16-17. They provided conflicting details of their short turnaround trip to New York City, and Mr. Holbrook was unable to relay any specifics about the trip. *Id.* at 13-17. During the stop, Mr. Holbrook was unable to make eye contact with Trooper Warman and was "excessively nervous[,] … his voice was quivering and his body was shaking." *Id.* at 12. Based on the short turnaround trip to a city known as a source for narcotics, Mr. Holbrook's extreme nervousness, the presence of a strong air freshener masking any other scents, the inconsistent responses regarding the travel itinerary, and the lack of details about the trip, Trooper Warman believed that Appellant and Mr. Holbrook possessed a large amount of money and were traveling to New York City to purchase narcotics. *Id.* at 18-19.

Trooper Warman requested permission to search the vehicle, but Appellant refused permission to search. Trooper Stephen Lucia was called to the scene for his police dog, a K-9 officer, to conduct an exterior sniff of the vehicle for narcotics. A sniff test was conducted, and the K-9 officer did not alert. Consequently, Trooper Warman released Mr. Holbrook and Appellant. *Id.* at 18-22.

On the morning of September 29, 2015, Trooper Warman conducted a traffic stop on Interstate 80 in Mercer County of a rental vehicle with a Michigan license plate for following too closely. *Id.* at 22-23. Trooper Warman again encountered Mr. Holbrook as the driver and Appellant as the front-seat passenger. Like the first traffic stop mere weeks before, the vehicle

was registered to Appellant, Mr. Holbrook exhibited extreme nervousness throughout the stop, Appellant and Mr. Holbrook were traveling to New York City on a short turnaround trip, Appellant and Mr. Holbrook provided conflicting responses regarding the details of their travel plans, and Mr. Holbrook was unable to provide specifics regarding the trip. Additionally, Trooper Warman did not observe any luggage in the vehicle. Again, based on the totality of the circumstances, Trooper Warman believed that Appellant and Mr. Holbrook were involved in illegal drug activity. *Id.* at 24-37.

Troopers Gary Knott and Christina Marth were called to the scene, along with their police dog, for a canine drug sniff of the vehicle. Trooper Marth observed Appellant remove something from his pocket and conceal it inside his pants. *Id.* at 37-38. Trooper Warman conducted a patdown of Appellant, and felt a hard plastic item near Appellant's groin area. When asked what he was concealing, Appellant produced a plastic cigar package containing a small amount of marijuana. *Id.* at 38-39.

Trooper Warman advised Appellant that a search of the vehicle was going to be conducted, and Appellant was asked whether he wanted to claim anything from within the vehicle. *Id.* at 39-40. Appellant stated that he had approximately $8,000 in the vehicle. *Id.* at 40. Trooper Marth then led her K-9 partner through the vehicle, and the K-9 officer alerted on the center dashboard area of the vehicle. *Id.* at 41. Trooper Warman searched the vehicle and discovered a bag on the passenger floorboard, containing $9,300.

*Id.* at 42-43. The interior of the bank bags where the money was found emitted a strong odor of raw marijuana. The packaging and large amount of money indicated to Trooper Warman that criminal activity was afoot. Trooper Warman seized the money and the small amount of marijuana and released Appellant and Mr. Holbrook from the scene. *Id.*

Later that evening, around 11:05 p.m., Troopers Jeremy Hoy and Luke Straniere conducted a traffic stop on Interstate 80 in Centre County of a rental vehicle with a Michigan license plate for following too closely and cutting off a tractor-trailer. *Id.* at 77, 110-111. When the troopers ran the vehicle through NCIC, they discovered that Trooper Warman had stopped the same vehicle earlier that day and made a large cash seizure. *Id.* at 78, 111-112. Trooper Hoy contacted Trooper Warman, who relayed the circumstances of his two prior stops of Mr. Holbrook and Appellant. *Id.* at 78-79, 81, 112, 122. Trooper Straniere spoke with Mr. Holbrook and Appellant. Just as in the first and second stops, Mr. Holbrook exhibited extreme nervousness and Mr. Holbrook and Appellant provided conflicting details regarding their trip to New York City. Additionally, Appellant stated that they had arrived in New York two days prior, while Mr. Holbrook said they had arrived one day ago. *Id.* at 79-81, 115-121, 125, 127. Based on all of the circumstances of this stop and the two prior stops, Trooper Straniere suspected that Appellant and Mr. Holbrook obtained contraband during their visit to New York City. *Id.* at 125.

Trooper Straniere was denied consent to search the vehicle. Shortly thereafter, Trooper Aaron Tiracorda arrived with his police dog, K-9 Officer Tom. K-9 Officer Tom conducted a drug sniff search of the exterior of the vehicle, but did not alert. *Id.* at 81-82, 94, 130-132. Trooper Straniere then conducted a search of the vehicle and found a bag containing two vacuum-sealed packages of marijuana. *Id.* at 133. Both Appellant and Mr. Holbrook were placed under arrest.

Prior to trial, Appellant filed a motion to suppress. A hearing was held where the aforementioned facts were developed. The trial court denied the motion, holding that the totality of the circumstances during the third traffic stop, coupled with the knowledge the troopers received regarding Trooper Warman's earlier stops, was sufficient to establish probable cause.

Thereafter, Appellant was convicted following a stipulated nonjury trial and sentenced as indicated above. Appellant timely filed a notice of appeal.[1] Appellant presents one question for this Court's consideration.

> Whether the [t]rial [c]ourt erred in denying Appellant's motion to declare the search and seizure at issue illegal under Article 1, Section 8 of the Pennsylvania Constitution as well as the Fourth and Fourteenth Amendments of the United States Constitution and suppress all evidence and fruit of the poisonous tree that was derived therefrom since the search of Appellant's vehicle was

---

[1] Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court responded with a brief statement indicating that it was relying upon its September 21, 2016 opinion, wherein it addressed its reasons for denying Appellant's motion to suppress.

conducted after the canine did not alert and was not supported by probable cause?

Appellant's Brief at 7.

We consider Appellant's question mindful of the following.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)).

On appeal, Appellant does not challenge the validity of the initial traffic stop on the evening of September 29, 2015, or that the troopers possessed the reasonable suspicion necessary for an investigative detention. Rather, he claims that the troopers lacked probable cause to search the vehicle because they did not observe any specific indicators of criminal activity during the third traffic stop, and K-9 Officer Tom did not alert his partner to the presence of narcotics in the vehicle. Appellant's Brief at 17.

Because Appellant does not challenge the validity of the initial traffic stop, we begin by addressing the search of Appellant's vehicle. "The Pennsylvania Supreme Court recently clarified that '[t]he prerequisite for a warrantless search [or seizure] of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required.'" ***Commonwealth v. Freeman***, 128 A.3d 1231, 1243 (Pa. Super. 2015) (quoting ***Commonwealth v. Gary***, 91 A.3d 102, 138 (Pa. 2014) (Opinion Announcing the Judgment of the Court).[2]

> The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant. The well-established standard for evaluating whether probable cause exists is the "totality of the circumstances" test. This test allows for a flexible, common-sense approach to all circumstances presented. Probable cause typically exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer.

***Commonwealth v. Runyan***, 160 A.3d 831, 837 (Pa. Super. 2017) (quoting ***Commonwealth v. Lechner***, 685 A.2d 1014, 1016 (Pa. Super. 1996) (internal citations omitted)). With respect to vehicular drug sniffs conducted by police dogs, this Court has held that

---

[2] ***Gary*** was a plurality opinion announcing the judgment of the Supreme Court. However, this Court has adopted the holdings of ***Gary*** in subsequent opinions. ***See, e.g., Freeman***, 128 A.3d 1231; ***In re I.M.S.***, 124 A.3d 311 (Pa. Super. 2015).

the failure of a trained dog to respond to the alleged presence of narcotics is but one factor to be considered in adjudging whether the totality of the circumstances establishes probable cause. Given the recognized fallibility of the dogs' sense of smell and its vulnerability to confusion by other ambient odors, a dog's failure to alert will not defeat probable cause where other factors, viewed within the totality of the circumstances, continue to support it.

*Commonwealth v. Brown*, 924 A.2d 1283, 1289 (Pa. Super. 2007).

Following Appellant's suppression hearing, the trial court denied Appellant's motion, holding that the totality of the circumstances during the third stop, namely:

> Mr. Holbrook's extreme nervousness, delayed answers to simple questions, and excessive chattiness; contradicting stories about visiting a male or female friend of [Appellant]; and an alleged travel itinerary that did not match up with the rental paperwork for the vehicle[,]… when combined with the knowledge Trooper Straniere obtained about Trooper Warman's stops, are sufficient to warrant a man of reasonable caution, training, and experience, to believe [Appellant] was engaged in criminal activity.

Trial Court Opinion, 9/21/2016, at 16.

Here, the circumstances included three traffic stops on the same short turnaround trip to a high drug trafficking city in a span of three weeks (with the two most recent traffic stops occurring on the same day: one *en route* to New York City, and one on the return trip), with the same occupants in two different out-of-state rental vehicles. Moreover, the troopers were also aware that (1) Mr. Holbrook was extremely nervous during all three stops; (2) Appellant and Mr. Holbrook gave conflicting accounts regarding the details of the New York City trips during all three stops; (3) Mr. Holbrook was never able

- 8 -

to provide any specifics regarding the trips; (4) Appellant stated on the third trip that they had arrived in New York city two days prior, when the officers knew he had been stopped *en route* to New York City that morning; (4) a K-9 search during the second stop resulted in an alert and the subsequent discovery and seizure of a large amount of cash inside bank bags emitting a strong odor of raw marijuana; (5) the first vehicle had very strong air fresheners; (6) there was a lack of luggage in the vehicle during the last two stops; and (7) Appellant attempted to conceal a small amount of marijuana during the second stop. **Compare Commonwealth v. Joseph**, 34 A.3d 855, 863-864 (Pa. Super. 2011) (holding troopers lacked probable cause where defendant was observed leaving a high drug trafficking area in a vehicle with air fresheners, where the troopers did not observe defendant behaving in a suspicious manner or observe any evidence that defendant was using drugs when he was stopped) **with Commonwealth v. Thompson**, 985 A.2d 928, 936 (Pa. 2009) (holding sufficient probable cause to stop and search defendant where police officer observed what he believed, based on his training and experience, was a hand-to-hand drug transaction, at nighttime, in a high crime area).

We agree with the trial court that based on the totality of the circumstances, the troopers had probable cause to believe that Appellant and Mr. Holbrook were trafficking drugs at the time of the third traffic stop.

Accordingly, the trial court properly denied Appellant's motion to suppress, and we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: December 22, 2017