Cardarelli et al. *v.* Simon et al., Appellants.

Argued May 6, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Arthur M. Grossman,* with him *Frank R. Sack* and *George P. Slesinger,* for appellants.

*Edward O. Spotts, Jr.,* with him *George P. Kountz,* for appellees.

OPINION BY KELLER, P. J., July 23, 1942:

About 1:30 o'clock in the morning of August 21, 1939 the minor plaintiff, Charles Cardarelli, eighteen years old, was riding his bicycle westwardly on Dell

Avenue, approaching McFarland Road, in the Borough of Mount Lebanon, on his way home from work. His bicycle did not have a lighted lamp in front, as required by sec. 801(g) of the Vehicle Code of 1929, P. L. 905, as amended by Act of June 29, 1937, P. L. 2329,[1] 75 PS §351(g). Dell Avenue at this point is twenty feet wide between curbs and is paved with concrete, and it intersects McFarland Road practically at right angles. The continuation of Dell Avenue on the west side of McFarland Road is not parallel with the avenue on the east side. It is 4.3 feet wider and the north curb is about five feet south of that curb on the east side.

McFarland Road is a through highway, paved with brick, thirty-four feet wide between curbs. About four hundred and ninety feet north of Dell Avenue there is a sharp downward slope in the road, so that one coming from the north could not see Dell Avenue until he passed the brow of the hill. At the northeast corner of McFarland Road and Dell Avenue there is an apartment house set back from the street, with a hedge four and a half feet high fronting on the property line of both streets. The sidewalks between the hedge and the curbs are about five feet wide. A "Thru Traffic Stop" sign is located on the north side of Dell Avenue, twenty-four feet six inches east of the east curb of McFarland Road, and a high street light is carried from a bracket extended from a pole at that corner, which bracket extends about eight or nine feet from the corner. Plaintiffs' statement of claim and their witness, Hartz, who made the photographs offered by them in evidence got the points of the compass mixed (9a-15a). McFarland Road runs in the general direc-

---

[1] "Every bicycle ...... shall be equipped with a lighted lamp, on the front thereof, visible under normal atmospheric conditions, from a distance of at least five hundred (500) feet in front of such bicycle, ......" Act of June 29, 1937, P. L. 2329, sec. 801(g), p. 2366.

tion of north and south, while Dell Avenue runs in the general direction of east and west. Plaintiffs' Exhibit No. 1 represents Dell Avenue looking *west* from the intersection; No. 2 is McFarland Road looking *south;* No. 3 is McFarland Road looking *north* to the intersection with Dell Avenue; and No. 4 is the intersection, looking towards the *southwest corner.*

Young Cardarelli was riding close to the north curb of Dell Avenue, and when he came to the "Thru Traffic Stop" sign, he stopped right there and rested his right foot on the curb. He said he looked up McFarland Road to his left for three or four hundred feet, and then to his right towards the Banksville Road, over four hundred feet, and seeing nothing he pushed from the curb with his foot and as he approached the intersection with McFarland Road, he looked again to his left and saw nothing, then as he crossed into McFarland, he said he looked to his right and saw nothing and proceeded to cross the road, looking straight ahead. As he got halfway across the street, he said, he was startled to hear the whistling sound of tires on the brick street, and looked to his right, and saw an automobile with two headlights shining coming from the right. He "guessed" it was about one hundred or one hundred and twenty-five feet away, coming "rather close" to the west curb of the road, by which, he explained, he meant about four feet away from the curb. When asked how fast the car was coming, he said, "I would say about fifty or sixty miles an hour". He stood up on his bicycle and "pumped hard to clear the intersection, to get out of the way", but when his front wheel had got almost into Dell Avenue, and he thought he was "safe off the intersection", he "looked back again just in time to see the car hit the back end of my bicycle". His bicycle had passed a manhole in the middle of the street, and the front end had passed another manhole to the west of it, a foot and a half east

of the west curb line of McFarland Road, when the rear of the bicycle was hit by the automobile, owned by the defendant, Feldmeier, and driven by the defendant, Simon, causing injuries to the minor plaintiff. He admitted he had no lighted lamp on the front of the bicycle. This action was brought on his behalf by his guardian, and by his father, to recover the damages sustained by them respectively. The jury rendered verdicts against both defendants, (1) in favor of the father for $577.90 and (2) in favor of the boy for $1,000. The plaintiffs moved for a new trial because of the inadequacy of the verdicts, and the defendants moved for judgments n. o. v. The court discharged both rules, and judgments were entered on the verdicts. The defendants appealed. The case turns mainly upon the question whether the evidence of the minor plaintiff established that he was guilty of contributory negligence as matter of law. But defendants also contend that the plaintiffs failed sufficiently to prove the negligence of the defendants. There is much to be said in support of this second proposition. Defendants were coming from Cardarelli's right, and, other things being equal, they had the right of way. Charles McCartney, a passenger in the car, called as a witness by the plaintiffs, testified that the car was being driven by Simon at a speed of around twenty-five or thirty miles an hour for about five hundred feet southwardly on Mc-Farland Road before they arrived at Dell Avenue; that there are four lanes of traffic on McFarland Road and the car was traveling in the second lane, counting from the west side, on the west (and proper) side of the center line. He was sitting on the front seat to the right of the driver and "the first thing I know I saw sort of a flash in front of the machine and we hit something. We stopped within fifty feet and went back, found we hit a fellow; didn't know he was on a bicycle; saw him lying on the sidewalk." It was testified that young Cardarelli was lying on the sidewalk at the

southwest corner of the intersection, with his feet dangling over the curb.

There was no testimony to rebut McCartney's evidence, except the minor plaintiff's own testimony that in the fraction of a second that he saw defendant's car coming head-on before it hit his bicycle, it was coming at a speed of fifty to sixty miles an hour. On this point, Mr. Justice STERN, speaking for the Supreme Court said in *Mulheirn v. Brown,* 322 Pa. 171, 173, 185 A. 304: "Weed testified that the Brown car was traveling at a rate in excess of fifty miles an hour, but, since he saw the car only momentarily and as it approached head on, his estimate of its speed is obviously of little value." So, too, Judge BALDRIGE, speaking for this court in the case of *Anderson v. Perta,* 138 Pa. Superior Ct. 321, 323, 10 A. 2d 898, said: "The only testimony of the speed at which DeMartin was driving was that of Perta and his passengers. They testified that they saw the approaching DeMartin car when it was about 150 feet away, traveling 60 miles an hour, and their car was going 25 to 30 miles per hour. They had, therefore, about one second—but a fleeting glance—to judge the speed at which he was traveling. That evidence was insufficient for a basis of a finding of negligence: *Ealy et ux. v. New York Central Railroad Co.,* 333 Pa. 471, 476, 5 A. 2d 110". There was, therefore, no competent evidence that the car was traveling at an excessive speed.

But whether or not the defendants' negligence was a question of fact for the jury, we are satisfied that the minor plaintiff's own testimony convicted him of contributory negligence as matter of law, and that he was not relieved of it by any other evidence in the case.

The evident purpose of the provision in the Vehicle Code as above amended, requiring that every bicycle at night shall be equipped with a lighted lamp on the front thereof visible in normal atmospheric conditions —as this night was—*from* a distance of at least 500

feet in front of such bicycle, is not so much to light the way of the bicyclist as to protect him from being run down or run into by a motor vehicle approaching from the front or side. The provision in the same section (not recited in the above note) that the bicycle "shall also be equipped with a red reflector or lamp in the rear, exhibiting or reflecting a red light visible, under like conditions, *from* a distance of at least five hundred feet to the rear of such bicycle", is to protect him from being run down or into by a motor vehicle coming from the rear. The expression used is not that the light shall be sufficient to light the road for a distance of five hundred feet, but that the *light shall be visible from a distance of five hundred feet.* Where the minor plaintiff said he stopped because of the "Thru Traffic Stop" sign, his bicycle could not be seen by any motor vehicle approaching from his right. The four and a half foot hedge effectually prevented that. Nor could it be seen until it came within five feet of the east curb line. While the defendants might, perhaps, have seen it then, if they had been on the lookout for it, the shadow directly under the street light might have rendered it obscure or dim; but can anyone conceive, if there had been a lighted lamp on the front of the bicycle, visible from a distance of five hundred feet, that the driver of the automobile would not have seen it and avoided the collision, unless the bicycle had come into sight so suddenly and at such a speed that, of itself, it amounted to contributory negligence on its rider's part? The sight of a moving light in the dark, even though there may be a street light present, necessarily will attract attention. That is why the statute requires it. The conclusion is inescapable that if this bicycle had been equipped with a lighted lamp, such as the statute requires, this accident would not have happened; and hence the failure to obey the statute contributed to its happening.

The case of *Hardie v. Barrett*, 257 Pa. 42, 101 A. 75,

relied on by appellee, is different from this one in at least two vital particulars. In that case, (1) *plaintiffs* were driving their automobile on the wrong side of the road, and (2) the driver of the *unlighted wagon,* which collided with plaintiffs' car, was the *defendant,* and the failure to comply with the New Jersey statute requiring it to have a lighted lantern was the act of negligence relied on by the plaintiffs for a recovery. To recover a verdict against a *defendant* because of his negligence the jury must find that the alleged negligence was the *proximate cause* of the injury; but as respects a *plaintiff,* suing another for damages alleged to have been caused by the latter's negligence, the rule in Pennsylvania is that he cannot recover *if his own negligence contributed in any degree* to the accident and injury. We have seen that the minor plaintiff's failure to have a lighted lamp on the front of his bicycle must have contributed to the collision, and therefore the plaintiffs cannot recover.

The second, third and fourth assignments of error are sustained. The judgments are reversed and judgments are now entered in favor of the defendants n. o. v.