J-S30037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS LAMAR JEFCOAT | |
| Appellant | No. 1822 EDA 2015 |

Appeal from the Judgment of Sentence April 22, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0004288-2014

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:             **FILED SEPTEMBER 16, 2016**

Thomas Jefcoat appeals from the judgment of sentence entered following his conviction on two counts of possession of a controlled substance.[1]  We affirm.

On July 8, 2014, a police officer stopped Jefcoat for riding his bicycle at night without a headlamp.  Based on evidence obtained during the stop, the officer arrested Jefcoat, and he was charged with the above possessory offenses.  Jefcoat filed a motion to suppress, which the court denied after an evidentiary hearing.  Subsequently, a jury found Jefcoat guilty of both possessory counts.  The court sentenced Jefcoat to a total term of 12-24 months' imprisonment.  Jefcoat filed timely post-sentence motions, which

_____

[1] 35 P.S. § 780-113(a)(16).

1

the court denied, and a timely notice of appeal. Both Jefcoat and the trial court complied with Pa.R.A.P. 1925.

Jefcoat raises two issues in this appeal:

1. The trial court erred in denying [Jefcoat's] motion to suppress because the police officer did not have reasonable suspicion to believe [Jefcoat] was armed or dangerous or engaged in criminal activity where he was stopped on his bicycle for failing to have a headlamp.

2. The trial court erred in denying [Jefcoat's] motion to suppress where the police did not have either reasonable suspicion or probable cause to conduct a canine search on [Jefcoat's] book bag.

Pa.R.A.P. 1925(b) Statement.

Both of these issues pertain to the trial court's order denying Jefcoat's motion to suppress. When the defendant challenges a suppression ruling, our standard of review requires us to determine

> whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Cruz*, 71 A.3d 998, 1002-03 (Pa.Super.2013).

The trial court accurately summarized the evidence adduced during the hearing on Jefcoat's motion to suppress:

> On July 8, 2014, at approximately 12:26 a.m., Officer David Howells, of the Allentown Police Department, was on routine patrol in a neighborhood described as 'high crime ... high drug

- 2 -

area', when he observed [Jefcoat] riding a mountain bike without headlights. He caught up with [Jefcoat] and stopped him in the 700 block of Liberty Street in the City of Allentown. [Jefcoat] reacted to this bicycle stop in a way which Officer Howells found 'odd'. He started crying and through his tears told Officer Howells that he did not want to go back to state prison. Officer Howells directed [Jefcoat] to interlock his fingers so that he could conduct a pat-down for weapons. While the pat-down was unfolding, [Jefcoat] was looking around, and attempting to pull his hands apart. He told Officer Howells that he was going to 'pass out' and continued to ask to get off the bike. Officer Howells thought [Jefcoat] was going to run.

[Following the pat-down,] Jefcoat [told Officer Howells that he] was on state parole for robbery[.] [Jefcoat] was wearing a book bag, which Officer Howells described as 'very heavy' and thought might contain a digital scale. [Jefcoat], who had consented to a search of his person, objected to a search of the book bag, but did comment that 'everything in the bag was his, [but] not the bag [itself].' Officer Howells called for a K-9 trained in drug detection. Officer Jonathan Smith arrived with K-9 Django, who alerted to the presence of illegal drugs in the book bag. A search warrant was then secured for the book bag, and when executed, it revealed the eighteen packets of K2 (synthetic marijuana) and seven packets of heroin.

Pa.R.A.P. 1925 Opinion, 2/11/15, at 2-3. In addition, Officer Howells testified during the suppression hearing that he has made many drug- and firearm-related arrests in this particular area during his eight years as a patrol officer. N.T., 12/15/14, at 8, 14-15.

In his first argument, Jefcoat contends that Officer Howells conducted an illegal pat-down, because he lacked reasonable suspicion to believe that Jefcoat was armed or dangerous or engaged in criminal activity at the time of the bicycle stop.

Before addressing this issue, we observe that Officer Howells observed Jefcoat riding a mountain bike on the streets of Allentown shortly after midnight in violation of Section 3507(a) of the Vehicle Code. In pertinent part, that section requires the following:

> **(a) Lamps and reflectors.** - Every pedalcycle when in use between sunset and sunrise shall be equipped on the front with a lamp which emits a beam of white light intended to illuminate the pedalcycle operator's path and visible from a distance of at least 500 feet to the front, a red reflector facing to the rear which shall be visible at least 500 feet to the rear, and an amber reflector on each side.

75 Pa.C.S. § 3507(a). The purpose of this provision is to protect bicyclists from collisions with automobiles. *Candarelli v. Simon*, 27 A.2d 250, 252 (Pa.Super.1942). Officer Howells had probable cause to stop Jefcoat for violating section 3507.

Having established that the initial stop was valid, we now address Jefcoat's argument that Officer Howells lacked reasonable suspicion to pat him down. During a valid stop, if an officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous,

> the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a [frisk] is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

- 4 -

*Commonwealth v. Scarborough*, 89 A.3d 679, 683 (Pa.Super.2014). To assess whether the officer has a reasonable belief that the individual is armed and dangerous, we give consideration to specific reasonable inferences that the officer can draw from the facts in the light of his experience, but we give no consideration to his unparticularized suspicions or hunches. *Commonwealth v. Zhahir*, 751 A.2d 1153, 1158 (Pa.2000).

Here, the totality of the circumstances gave Officer Howells reasonable suspicion to believe that Jefcoat was armed and dangerous. The stop was late at night in a high crime neighborhood. Moreover, the trial court aptly reasoned that

> [Jefcoat]'s reaction to the bicycle stop was out of the ordinary. Most people do not start crying when they are stopped for a motor code violation. Generally, crying is the shedding of tears in response to an emotional state, not the angst from a potential ticket. It is also doubtful that [Jefcoat] believed he was returning to a state prison for such a minor offense. Instead, [Jefcoat]'s expression of fear that he would be returned to state prison suggests that he was not out for a moonlight serenade on his bicycle.

Pa.R.A.P. Opinion, at 5. Accordingly, Jefcoat's first argument lacks merit.

In his second argument, Jefcoat contends that the police lacked probable cause or reasonable suspicion to conduct a canine sniff of his bookbag. We disagree.

The use of trained dogs to sniff for the presence of drugs does constitute a search under Article I, section 8 of the Pennsylvania Constitution. *Commonwealth v. Johnston*, 530 A.2d 74, 78 (Pa.1987).

Police officers only need reasonable suspicion to conduct a canine sniff of a *place*. *Id*. at 80 (reasonable suspicion necessary for canine sniff of storage locker). On the other hand, police must have probable cause to conduct a canine sniff of a *person* or of satchels that the person is carrying at the time of the stop. *Commonwealth v. Martin*, 626 A.2d 556, 560 (Pa.1993) (probable cause needed for canine sniff of satchel that defendant was carrying when police officers stopped him in parking lot outside restaurant; "because the search in this case involved Martin's person, we believe that in addition to being lawfully in place at the time of the search, the police must have probable cause to believe that a canine search of a person will produce contraband or evidence of a crime"). Like the defendant in *Martin*, Jefcoat was carrying a container (more specifically, a bookbag) at the time of the bicycle stop. Thus, under *Martin*, probable cause was necessary for the canine search of the bookbag.

"[A] determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Brown*, 924 A.2d 1283, 1286 (Pa.Super.2007). "Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa.1999). Additionally, a police officer's experience may be a

relevant factor in determining probable cause to arrest. ***Commonwealth v. Thompson***, 985 A.2d 928, 935 (Pa.2009). An officer's information with respect to prior drug dealing in the same vicinity is highly relevant to the determination of probable cause. ***Commonwealth v. Colon***, 777 A.2d 1097, 1101 (Pa.Super.2001). Courts recognize that "suspicious conduct or behavior following a lawful stop of a suspect may establish probable cause for arrest …" ***Commonwealth v. Legg***, 392 A.2d 801, 803 (Pa.Super.1978); ***see also United States v. Yokshan***, 658 F.Supp.2d 654, 667 (E.D.Pa.2009) (collecting cases).

Several factors, viewed collectively, furnished probable cause for the canine sniff of Jefcoat's bookbag: (1) his emotional outburst that he did not want to return to state prison, (2) his nervous demeanor during Officer Howell's pat-down (looking around, attempting to pull his hands apart, stating he was going to "pass out" and repeatedly asking permission to get off the bike); (3) his objection to a search of the bookbag; (4) his strange claim that the bookbag did not belong to him, but everything inside the bookbag did; (5) the heavy weight of the bookbag, which led Officer Howells to believe that it contained a digital scale;[2] (6) the lateness of the hour and high-crime nature of the neighborhood, and (7) Officer Howells' experience

---

[2] Some might consider this more of a hunch than a reasonable inference, but even if we consider it a mere hunch, the remaining factors are sufficient to provide probable cause.

in patrolling the area and in making numerous drug- and firearm-related arrests there. For these reasons, the trial court properly denied Jefcoat's motion to suppress.

Judgment of sentence affirmed.

President Judge Gantman concurs in the result.

President Judge Emeritus Ford Elliott files a Concurring/Dissenting Memorandum Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2016